*811 MERRITT, Circuit Judge,
dissenting.
I dissent from the court’s ruling on Petitioner Moore’s ineffective assistance of counsel claim arising from the testimony of Dr. Chiappone, discussed under the heading “Claim (2)(B)” of the majority opinion.
The majority opinion asserts that this Court is faced with a “novel question stemming from Pinholster: May a federal ha-beas court consider additional evidence not before the state courts ... when the parties jointly move to expand the record?” The fact is, as the majority admits in Footnote 10, the district court did not rely on the new evidence in rendering its decision.
Indeed, neither the magistrate judge nor the district court judge even cited the additional deposition evidence, which the majority contends is prohibited under Pinhol-ster. The only citations in the opinion are to the trial court transcripts. Based on that record, the magistrate judge found and the district court agreed that the Ohio Supreme Court’s decision finding no Sixth Amendment violation was “objectively unreasonable” under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). The district court judge agreed. It found that counsel was so ineffective as to be unaware that their own witness would turn their prime mitigation evidence of remorse and lack of intent on its head. This contention has nothing to do with “residual doubt,” Pinholster or “jurisdiction.” The Court has simply not responded to the straightforward ineffective assistance of counsel arguments that petitioner makes.
A fairminded jurist need look no further than the trial transcript to conclude that counsel was grossly deficient in this case. First, the defendant’s strongest theory of mitigation was the same theory he maintained throughout the guilt phase, namely that the shooting was accidental and he was honest in relaying this information to authorities. The Defense’s only expert witness, Dr. Chiappone, testified to just the opposite, undermining the defense’s theory, the defendant’s credibility, and any hope of proving the mitigating factor of remorse. As his attorney stated later in depositions, “I believed at that time he was going to get the death penalty, based on what Dr. Chiappone said. He was cooked.” (Jt. Apx. Pg. 1888-89).
Unfortunately for Moore, counsel’s incompetence did not end with the apparent lack of preparation or anticipation of this devastating testimony. Instead of attempting to explain or rehabilitate Dr. Chiappone’s testimony, counsel remained silent on that very issue during his entire closing argument. The lawyer, Timothy Deardorff, later explained his rambling and destructive closing argument as a panicked response to Dr. Chiappone’s testimony, which he described as getting “hit with a bean ball” and having to go to bat again. (Jt.Apx.Pg.1897). The jury never heard this reasoning, of course. Instead, the jury heard from defense counsel a litany of reasons to give Moore the death penalty. Deardorff told the jury that a long sentence in jail was not fair to the victim’s family. (T.p. 1214). He also inexplicably stated, “I mean if you shoot somebody in the head and you’re in a little area and his brains fly out all over the wall, that is going to have an effect.” (T.p. 1204). After all of this, he all but invited the jury to return a death verdict: “I know I wouldn’t want to go to jail for 73 years. I’d rather you put me to death.” (T.p. 1221).
A simple reading of this trial transcript provides overwhelming evidence of a blatant Sixth Amendment violation. The la *812 ter developed deposition testimony, albeit unnecessary for the district court’s determination to issue the writ, further emphasizes the incompetence of the lawyers in this case. Both of Moore’s lawyers testified that they were shocked and surprised at Dr. Chiappone’s testimony, believing that they had been “sandbagged” by their own expert. (Jt.Apx.Pg.1779). Yet, the lawyers cannot explain why, after receiving messages from their expert that he was going to meet with the prosecutor just days before his testimony, they never asked him one question about the content of this hour-and-a-half meeting and never stopped him from meeting with opposing counsel in the first place. When asked if he discussed this ex parte meeting with Dr. Chiappone, lead counsel, Daniel James, simply stated, “No. I’m sure I did not discuss it, I wasn’t aware of it.” (Jt.Apx.Pg.1752). He put his chief mitigation witness on the stand in a death penalty case without knowing what he was going to say. How much more incompetent can a criminal defense lawyer get?
The court’s opinion on ineffective assistance of counsel arising from Dr. Chiap-pone’s testimony is in direct conflict with the similar ineffective assistance cases of Stevens v. McBride, 489 F.3d 883 (7th Cir.2007), and Combs v. Coyle, 205 F.3d 269 (6th Cir.2000). In both of those cases the same thing happened with the main expert witnesses in death penalty cases. In Stevens, the court said that “it is uncontested that Stevens’s lawyers knew nothing about the content of Dr. Lennon’s planned testimony.” The Court concluded:
This is a complete failure of the duty to investigate with no professional justification. Where an expert witness’s opinion is “crucial to the defense theory[,] defense counsel’s failure to have questioned [the expert] ... prior to trial is inexcusable.”
489 F.3d at 896 (quoting Combs, 205 F.3d at 288).
In addition to the portion of the Combs case quoted in Stevens by the Seventh Circuit, the Sixth Circuit opinion notes that Dr. Fisher, the expert in Combs, like Dr. Chiappone in the instant case, “testified to the opposite” of the reason he was put on the stand. Id. The Court explains:
Defense counsel should have known Fisher’s opinion on this ultimate issue and should have prepared accordingly.
Regardless of whether Combs’s counsel should have known or instead actually knew Fisher’s opinion regarding Combs’s intent, however, counsel’s decision to put him on the stand was objectively unreasonable.... Combs could not have been acting purposefully. Fisher’s testimony directly contradicted the sole defense theory that Combs lacked the requisite intent to commit murder.... Furthermore, not only did Fisher’s testimony destroy any hope of a successful intoxication defense, but it also helped the prosecution to establish one of the elements of its case in chief. Quite simply, this testimony was completely devastating to the defense, and counsel’s decision to present it was objectively unreasonable. Id.
The majority opinion in the instant case cannot be reconciled with the Combs and Stevens cases. Nor can it be reconciled with common sense. The Sixth Amendment does not allow lawyers who are so negligent that they put on the stand a key expert witness who then testifies directly contrary to his client’s interest and establishes the key element of the prosecution’s case (“premeditation”).
Here, Dr. Chiappone became in effect a witness for the prosecution. Without Dr. Chiappone’s testimony, the Defense’s mitigation theory of remorse and an accidental shooting may well have convinced one or *813 more jurors. The district court correctly recognized that Moore has shown prejudice, and thus, the Ohio Supreme Court’s decision that counsel was effective in this case was objectively unreasonable under the Supreme Court’s line of eases expounding on the Sixth Amendment right to counsel. The Sixth Amendment rejects as incompetent lawyers who are so negligent that they put on the stand a key expert who then testifies directly contrary to his client’s interest and establishes the key element of the prosecution’s ease.
A discussion of Pinholster is unnecessary in this case. After all, the district court, as the majority apparently concedes, looked exclusively at the state record in determining that the Ohio state courts had unreasonably applied federal law. The district court then determined that both Strickland prongs were met and found ineffective assistance of counsel. This case is perhaps one of the rare and more unfortunate ones where the state trial court record is so full of obvious malpractice that a finding of ineffective assistance was simple, based only on the state trial court record. The Supreme Court never discusses Pinholster as a “jurisdictional” bar. The State never argued that Pinholster was “jurisdictional.” The majority’s contention to this effect comes out of thin air and is neither grounded in Pinholster nor habeas law. It appears to create a fictional obstacle where there is none. The majority seems somehow to read Pinholster in such a fashion as to eliminate any possible federal review. If this result is what is meant then it is obviously wrong and deeply confused about the meaning of Pinhol-ster in this case. It is unclear to me what the majority intends to accomplish by a discussion of jurisdiction and waiver in connection with Pinholster.